**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **POLARIS WIRELESS, INC.,** | |
| *Plaintiff,* | |
| v. | Case No. _____ |
| **SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

<u>**COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff Polaris Wireless Inc. ("Polaris Wireless" or "Polaris" or "Plaintiff"), hereby files this Complaint for Patent Infringement against Samsung Electronics Co., LTD. ("SEC") and Samsung Electronics America, Inc. ("SEA," and collectively with SEC, "Defendants" or "Samsung") and alleges as follows:

## THE PARTIES

1. Plaintiff Polaris Wireless is a corporation organized and existing under the laws of the State of Delaware, with employees located in the United States and internationally. Polaris Wireless has offices in California, Switzerland, and India. Polaris Wireless is a global industry leader in geolocation services technology.

2. Upon information and belief, Defendant SEC is a foreign corporation organized and existing under the laws of the Republic of Korea. SEC has a principal place of business located at 129 Samsung-ro, Yeongtong-Gu, Suwon-Si, Gyeonggi-Do 16677, Republic of Korea.

3. SEC is one of the world's largest technology companies and a leading manufacturer and seller of mobile phones, tablets, and other consumer electronics.

4. Upon information and belief, SEC is the worldwide parent corporation for Defendant SEA and is involved in the design, manufacture, and provision of products sold by SEA.[1] SEC is also responsible for the infringing activities identified in this Complaint.

5. Defendant SEA is a corporation organized and existing under the laws of the State of New York. SEA maintains facilities at 6625 Excellence Way, Plano, Texas 75023. SEA may

---

[1] SEC prepares financial statements in accordance with Korean IFRS 1110 Consolidated Financial Statements. In the "Notes to the Consolidated Financial Statements" for the year ending December 31, 2024, SEC states that SEC is the controlling company of its subsidiary SEA Samsung Electronic Co., LTD and its Subsidiaries, *Consolidated Financial Statements*, 15 (December 31, 2024) (stating "SEC, as the controlling company, consolidates its 230 subsidiaries, including Samsung Display Co., Ltd. and Samsung Electronics America Inc.").

be served with process through its registered agent for service in Texas: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. SEA is a wholly owned subsidiary of SEC.

6.    Defendants sell and offer products for sale in this District, including at the Samsung Experience Store at 2601 Preston Road, Frisco, Texas. Defendants further sell and offer products for sale through authorized dealers in the State of Texas and this District. The products sold and offered for sale in this District include one or more of the products that perform the accused functionalities as described herein.

7.    Upon information and belief, SEA is a general manager for SEC. SEA is responsible for, among other things, handling the sales, marketing, distribution, and customer support for SEC products within the United States.

## NATURE OF THE ACTION

8.    This is a civil action against Samsung for patent infringement arising under the patent statutes of the United States, 35 U.S.C. § 271 *et seq*. for the infringement of United States Patent Nos. 8,406,166 (the "'166 Patent"),  7,753,278 (the "'278 Patent"), 7,848,762 (the "'762 Patent"),  7,116,987 (the "'987 Patent"), 9,237,423 (the "'423 Patent"), and  9,432,811 (the "'811 Patent") (collectively, "the Polaris Patents").  True and correct copies of the '166 Patent, the '278 Patent, the '762 Patent, the '987 Patent, the '423 Patent, and the '811 Patent are attached as Exhibits A, B, C, D, E, and F, respectively, to this Complaint.

## JURISDICTION AND VENUE

9.    This is an action for patent infringement arising under the patent laws of the United States of America, Title 35 of the United States Code. This Court has subject matter jurisdiction over the claims of patent infringement alleged in this Complaint under 28 U.S.C. §§ 1331 and 1338(a).

COMPLAINT FOR PATENT INFRINGEMENT                                                                 Page 2

10.     This Court has personal jurisdiction over Samsung in this action pursuant to due process and/or the Texas Long Arm Statute because Samsung, directly and/or through its agents, subsidiaries, and/or intermediaries, has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Samsung would not offend traditional notions of fair play and substantial justice.

11.     Samsung has engaged in continuous, systematic, and substantial activities— including substantial marketing and sales of products with infringing location services such as mobile phones, tablets, and watches, through its stores, designated retailers, and highly interactive websites—within this State. Furthermore, Samsung directly and/or through the direction and control of its third-party vendors has committed and continues to commit acts of infringement in this District by, among other things, performing the steps claimed by the methods in the Polaris Patents. Samsung derives substantial revenue from infringing acts in this District, including from the performance and use of the infringing location services in this District, as well as the import, sale, and offer for sale of Samsung products, including through authorized dealers located in this District.

12.     Alternatively, upon information and belief, SEC has purposefully availed itself of the privilege of conducting business activities throughout the United States by advertising and regularly selling products that perform the accused functionalities to consumers through its highly interactive commercial website, thereby causing injury to Polaris Wireless in the United States. These activities in the aggregate subject SEC to jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(2) and make exercising such jurisdiction consistent with the United States Constitution and laws.

13.     Venue is proper as to SEA in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b). SEA maintains a regular and established place of business in this judicial district at 6625 Excellence Way, Plano, Texas 75023. At least a portion of Defendants' infringement of the Polaris Patents, as alleged herein, occurs within this judicial district through Defendants' offering, use, and performance of the infringing location services within this judicial district, and introduction of products that perform one or more steps of the infringing methods into the stream of commerce knowing they would be sold and/or used in this judicial district.

14.     Venue is proper as to SEC in this District under 28 U.S.C. § 1391(c)(3) because SEC is not a resident of the United States and therefore may be sued in any judicial district.

15.     Upon information and belief, individuals reside within this District who have discoverable information related to this action. For example, upon information and belief, Samsung employs individuals in this District who developed or maintain Samsung's location-based services and who know or have custody of relevant discoverable information. Current and former Polaris Wireless employees reside in this District who have relevant discoverable information as well.

16.     Samsung has previously been a party to other patent infringement actions brought in this District and did not dispute this Court's jurisdiction.[2]

---

[2] *See, e.g.*, Answer (Dkt. No. 26) at ¶¶ 21–23*, Telcom Ventures LLC v. Samsung Electronics Co., Ltd.*, No. 2-24-cv-00691 (E.D. Tex. Dec. 9, 2024); Answer (Dkt. No. 22) at ¶¶ 17, 20–24, *VB Assets, LLC v. Samsung Electronics Co., Ltd.*, No. 2:24-cv-828 (E.D. Tex. Jan. 14, 2025); Answer (Dkt. No. 26) at ¶ 7, *Mobile Data Technologies LLC v. Samsung Electronics America, Inc.*, No. 2:24-CV-00435 (E.D. Tex. Oct. 7, 2024).

## POLARIS WIRELESS BECOMES A GLOBAL LEADER IN SOFTWARE-BASED WIRELESS LOCATION TECHNOLOGY

17.     Polaris Wireless was founded in 1999 to provide software-based highly accurate location systems. At that time, the Federal Communications Commission ("FCC") had mandated US-based wireless carriers to implement accurate location systems for the Public Safety community, including to better allow first responders such as police and firefighters to locate mobile callers in emergency situations. The prevailing method for locating mobile devices was triangulation through Cell ID. But triangulation had many drawbacks, including limited accuracy, environmental sensitivity, and heavy signal interference. As such, Polaris Wireless set out to develop an entirely unique solution to vastly improve location accuracy for mobile devices.

18.     Initially, only hardware solutions were available to achieve the goal of improved accuracy in mobile device location. First, a device-based solution required wireless carriers to add GPS hardware to all handsets. Second, a network-based solution known as UTDOA (multi-trilateration) required substantial hardware modifications in all base-stations in the networks.  At the time, both solutions were prohibitively expensive, requiring significant capital investments in hardware. GPS also experienced sub-optimal accuracy during bad weather conditions, obscured line-of-sight, and indoor environments.

19.     Polaris Wireless instead sought a less capital-intensive solution that worked well in all environments. Polaris Wireless thereafter invented, developed, and deployed the first highly accurate software-based solution for locating mobile devices. That solution involved "wardriving"—a method whereby Polaris Wireless used vehicles equipped with devices for measuring the signal strength of access points at various locations. Polaris Wireless then used those measurements to construct a database of access point signal-strengths at locations throughout a geographic region. This database is similar to a combination lock, where each geographic location

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 5

contains a unique set of access point signal strengths. By measuring the access point signal strengths or other traits or characteristics by a mobile device at a given location, pattern-matching them to Polaris Wireless's proprietary database, and performing certain back-end calculations, Polaris Wireless devised a way to quickly and accurately identify the precise location of a mobile device.

20.    This breakthrough led Polaris Wireless to develop several leading-edge and best-in-class technologies over the years. Most prominent is Polaris' Wireless Location Signature ("WLS") technology, which employs its proprietary Radio Frequency Pattern Matching ("RFPM") technique—also known as "finger printing"— to provide highly accurate location services for wireless terminals. This technique can be combined with other location estimates, such as those from GPS, to provide a hybrid estimate. In addition, Polaris Wireless has also developed a location technique referred as the "Hybrid Location Engine" ("HLE"). This technology combines data points from a variety of different sources, including cellular signal strengths, GPS location, Barometric pressure, Bluetooth, and other sensors, to quickly and accurately calculate the location of a wireless terminal.

21.    In addition to its groundbreaking RF finger printing technology, another of Polaris Wireless's pioneering innovations was the use of barometric pressure sensing in geolocation. By leveraging the barometric pressure of a device, Polaris Wireless can pinpoint the location of a specific point in 3D—that is, on a vertical axis. This functionality allows users to, for example, locate a mobile caller on a specific floor of a building, where prior methods provided only a generalized geographic location.

22.    Polaris Wireless's innovations in geolocation led to its launch of its proprietary OmniLocate product. OmniLocate is a software-based product that requires no additional

hardware installations such as those at cellular base stations to perform geolocation. It offers wireless operators a product they can seamlessly integrate into their geolocation solutions, with location accuracy that has been proven on numerous occasions to exceed FCC E911 regulatory requirements for emergency call location.

23.     Important applications of Polaris Wireless's products are for use in public safety and national security. For example, WLS technology can help first responders find people in need of assistance (wireless 911 callers), provide location situational awareness of first responders themselves, and provide accurate active tracking and passive location surveillance for law enforcement investigations and intelligence use cases.

24.     Since receiving its first patent in 2001, Polaris Wireless has been awarded or has pending over 130 patents and has expanded the application of its WLS technology to a wide variety of location services, including indoor 3D location services and critical infrastructure protection. Polaris Wireless's indoor location services technology is now commonplace for many smartphone users. Polaris Wireless has never lost a competitive trial, and its WLS technology has been recognized for its unmatched cost effectiveness and accuracy. Polaris Wireless remains an operating company to this day and is practicing at least several claims of the asserted Polaris Patents. The inventions embodied by the Polaris Patents represent a significant part of the company's core intellectual property and are part of the foundation of Polaris Wireless's products and services that it continues to offer its customers.

25.     Polaris Wireless has achieved many significant milestones in its 25-year history, along with numerous awards commemorating them. For instance, in 2008, Polaris Wireless successfully developed the first high accuracy wireless location system for federal National Security applications in the U.S.

COMPLAINT FOR PATENT INFRINGEMENT                                              Page 7

26.     By 2010, Polaris Wireless had received dozens of Public Safety deployment contracts with government agencies, as well as numerous commercial contracts with major mobile phone service providers around the country, including Edge Wireless (now part of AT&T), Rural Cellular (now part of Verizon Wireless), Dobson Cellular (now part of AT&T), and SunCom (now part of T-Mobile USA).

27.     In 2011, Polaris Wireless was awarded the Frost & Sullivan Location-Based Services Enabling Technology Award (an award it would win again in 2014 and 2025). In 2012, Polaris Wireless was named to the Inc. 5000 list, a ranking of the nation's fastest growing private companies. That same year, Polaris Wireless was the only network-based location solution participating in an indoor location technology market trial organized by the FCC. Over the next several years, Polaris Wireless continued to be awarded major contracts, including with cellular service providers and government agencies seeking strategic public safety solutions, while continuing to win awards for innovation.

28.     By 2019, Polaris Wireless made commercially available the industry's first high-accuracy, carrier-independent 3D location platform, allowing developers to provide end-users with pinpoint accurate location, including indoors and in high-rise buildings with floor-level accuracy. Polaris Wireless designed this technology to be flexibly implemented, including on devices such as smartphones, through mobile applications, and in wireless operator networks. Polaris Wireless's solution soon thereafter demonstrated FCC compliance, with the FCC noting in November 2019 that Polaris Wireless has "consistently shown in testing that their solutions, which rely on barometric pressure sensors in handsets, could meet or surpass [the required] standard" of 3-meter vertical accuracy.[3]

---

[3] Kelly Hill, *FCC Rejects Calls to Delay Indoor Location Accuracy Improvements*, RC Wireless News (Jan 12, 2021), available *at* https://www.rcrwireless.com/20210112/network-

29.     In 2022, Polaris Wireless entered a commercial agreement with Schok, LLC to deploy its Z-axis location solution into Schok feature phones. On information and belief, Schok is headquartered in Frisco, Texas within this District.

30.     As Polaris Wireless became the industry leader for location services technology, competitors began to recognize the utility of Polaris Wireless's inventions. This has led to infringement by major competitors, including Samsung.

### SAMSUNG'S KNOWLEDGE OF POLARIS WIRELESS AND ITS PATENTS

31.     Samsung has been aware of Polaris Wireless's patents and their application to Samsung's business since, at the very least 2023, when Samsung filed several *inter partes* review proceedings with the patent office, relying heavily on several Polaris Wireless patents to successfully argue that certain patents that Broadphone LLC accused Samsung of infringing were invalid as not sufficiently novel. (IPR2024-00153, IPR2024-00154, IPR2024-00155 (collectively, "the Samsung IPRs")).

32.     Samsung filed the Samsung IPRs in response to the allegations in *Broadphone LLC v. Samsung Elecs. Co., Ltd., et al.*, 23-001, Dkt. 1 (E.D. Tex. Jan. 2, 2023). In that case, Samsung was accused of infringing three patents ("the Broadphone Patents") because, for instance, "Samsung makes, uses, offers for sale, sells, and/or imports certain Android devices that include the Samsung Reminder app and/or support tracking, locating, and navigating to the location of Samsung SmartTag devices, Samsung SmartThings devices, or Samsung Android devices." *Id.*, ¶ 24.

---

infrastructure/fcc-rejects-calls-to-delay-indoor-location-accuracy-improvements#:~:text=The%20FCC%20had%20adopted%20rules,barometric%20pressure%20sensors%20in%20handsets%2C.

33.    In the Samsung IPRs, Samsung relied on several Polaris Wireless patents, including the asserted '987 Patent, as well as U.S. Patents Nos. 6,269,246; 6,782,265; 6,393,294; and 6,944,465 (*see, e.g.,* IPR2024-00154, "Petitioner's Current List of Exhibits," filed Jan. 16, 2025). On information and belief, Samsung would have reviewed several other Polaris Wireless patents in landing on those five to be formally relied on in the Samsung IPRs. Throughout the course of the Samsung IPRs Samsung discussed these five Polaris Wireless patents at length, marked full copies of those patents as Samsung exhibits, and even copied images and text out of those patents into Samsung demonstratives and filings, all for the purpose of arguing that these Polaris Wireless patents disclosed all of the inventive aspects that were claimed in the later-filed Broadphone Patents that Samsung was accused of infringing through Samsung's location-based services in its mobile devices. Samsung thus knew, or should have known, of the substantial likelihood that some of the same Samsung services accused by Broadphone infringe Polaris Wireless's patents, yet Samsung never acquired a license to Polaris Wireless's patents and continued Samsung's infringing activities.

34.    Samsung further knew of Polaris Wireless's patents, including the Polaris Patents, through Polaris Wireless's public statements about its patents and their application in the relevant space, through similar statements by third parties (including in awarding Polaris Wireless's technology), and through Polaris Wireless employees who were later hired by Samsung.

35.    At least since Polaris Wireless was awarded its first patent in 2001, Polaris Wireless, and others reporting on and bestowing awards on Polaris Wireless, frequently discuss Polaris Wireless's patents and the relevant technology they cover, as exemplified by the following:

      a.    "Our engineering team holds over 100 patents and is continually perfecting our algorithms to leverage all data, from all sensors, in any environment, to deliver the highest possible location accuracy." "Polaris Wireless Lauded by Frost & Sullivan for its Groundbreaking, Hybrid Wireless 3D Location Platform" (2019) (available

at https://www.frost.com/news/press-releases/polaris-wireless-lauded-by-frost-sullivan-for-its-groundbreaking-hybrid-wireless-3d-location-platform/);

b. "Polaris Wireless is focused on innovation and has been issued 124 patents for location technology with 15 patents specifically related to vertical and barometric-based vertical location." "Polaris Wireless Signs Two Commercial Agreements for E911 Z-Axis Location" (March 16, 2022) (available at https://www.polariswireless.com/newsroom/press-releases/jun-21-2022/polaris-wireless-signs-two-commercial-agreements-for-e911-z-axis-location/);

c. "About Polaris Wireless," explaining the timing of Polaris's patent applications and granted patents on various technologies. (available at https://www.polariswireless.com/company/history-milestones/).

36. Further, during the time period of 2014 to present, Samsung hired at least five individuals who had previously been employed by or consulted for Polaris Wireless. Given how central Polaris Wireless's patents on the relevant technology are to Polaris Wireless's business, each of these individuals came to Samsung bearing the knowledge of Polaris Wireless's patents, including the Polaris Patents, which knowledge is charged to Samsung. If there were any doubt, at Polaris Wireless's U.S. headquarters Polaris Wireless has framed copies of its issued patents hanging on the walls, in plain view of any of these individuals if they worked at or visited that office.

37. Samsung also engaged in numerous meetings and correspondence with Polaris Wireless around a potential business arrangement, whereby Polaris Wireless sent Samsung materials discussing its patents.

38. For a period between approximately 2018 to 2019, Samsung employees met frequently with Polaris Wireless to discuss a potential business deal. Several of these Samsung employees were based in Samsung's Plano, Texas corporate offices and, on information and belief, still reside in or around this District.

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 11

39.    During those discussions Polaris Wireless shared with Samsung substantial information about Polaris Wireless's patent portfolio and the technology it covers in Polaris Wireless's product offerings.

40.    As one example, following a 2018 meeting in Polaris Wireless's corporate offices with several Samsung employees, Polaris Wireless sent Samsung a brochure describing its "Altus Blue Force" product aimed at providing highly accurate XY and Z-location services for law enforcement and first responders. That brochure described this product and Polaris Wireless's business and other partnerships more broadly, including emphasizing its "deep patent portfolio" in these technologies.

41.    As another example, following a meeting in 2019, Polaris Wireless sent Samsung employees a brochure describing Polaris's OmniLocate product. The first page of that brochure provided that "OmniLocate supports a variety of location technologies, from the most basic Cell ID to its patented Polaris Wireless Location Signatures (Polaris WLS), which has over 100 patents associated with it." Elsewhere the brochure described Polaris Wireless's best-in-class Hybrid Location Solution using WLS, noting that it "uses all available handset, sensor and network-based location technologies" and uses Polaris Wireless's "patented" RF pattern matching approach to geolocation. Finally, Polaris Wireless described the history of its company, noting that its core research and development "has yielded over 100 patents."

42.    Based on all of the foregoing, Samsung was either aware of the Polaris Patents or willfully blind to them, and has never approached Polaris Wireless about licensing them. As such, Samsung's infringement of the Polaris Patents has been, is, and continues to be willful.

## POLARIS WIRELESS'S PATENTS

43.    In 2001, Polaris Wireless was issued its first patent for a new approach to geolocation services that locate, coordinate, and map geographic locations with a high degree of specificity.  This technology revolutionized, among other things, how mobile telephone users could locate their devices and use location-sensitive applications. For nearly 25 years, Polaris Wireless has been at the forefront of geolocation services technology and has been recognized as an industry leader in this space.

44.    **The '166 Patent** is entitled "location estimation of wireless terminals through pattern matching of signal-strength differentials" and claims priority to US Patent Application 10/357,645, filed on Feb. 4, 2003.

45.    In estimating wireless terminal locations, various factors can introduce errors in signal strength measurements, for example the make and model of the terminal, its antenna condition, its battery conditions, and whether the terminal is in a vehicle or not. '166 Patent at 3:25-33. The inventions claimed by the '166 Patent provide concrete solutions to the errors that inaccurate signal strength measurements introduce to the methods of location estimation using empirical signal strength measurements. In an exemplary embodiment, these biases are ameliorated by combining the expected signal strength measurements into an expected differential value and comparing that value to the differential of the actual measured values. '166 Patent at 3:34-38; 3:59-62.

46.    The '166 Patent describes specific steps to achieve its described benefits, including in an exemplary grouping of procedures of (1) populating a signal strength database, (2) receiving signal-strength measurements from a wireless terminal, (3) estimating the location of the wireless terminal, and (4) using that estimated location of the wireless terminal. '166 Patent at 6:14-23. Within each exemplary step, the '166 Patent teaches specific methods to manage the various errors

and biases that may be introduced to the signal strength measurements. In one example, a signal-strength database is populated with specific data structures that combine location values with tuples of signal-strength measurements. Later measurements from the wireless terminal are similarly formed into combinations of signal-strength measurement tuples that are periodically provided to a wireless switching center. '166 Patent at 6:34-48, 8:63-66.

47.    Some embodiments of the '166 Patent further teach that the signal-strength database location values can be partitioned into a plurality of tessellated location. '166 Patent at 6:60-63.

48.    The '166 Patent also teaches specific methods comparing signal-strength measurements with the wireless terminal's reported signal strengths, including, in an embodiment, comparing the division of measured signals to different calculations based on whether or not those measurements are at maximum signal strength and thus may introduce errors into a calculated signal strength differential. '166 Patent at 9:53-61, 10:51-53.

49.    **The '278 Patent** is entitled "estimating the location of a wireless terminal based on non-uniform locations" and claims priority to US Patent Application 2006/0240843A1, filed on Oct. 26, 2006.

50.    As the prevalence of wireless technologies increased, the consequent increase in needing to accurately estimate the location of those terminals became more and more pronounced. Electromagnetic signals received by wireless terminals have traits that depend on various factors, for example nearby topography, receiver location, and transmitter location. These traits can be used to estimate a location of a given wireless terminal by comparing measurements to past data of those traits.

51.    The inventions claimed by the '278 Patent provide concrete solutions to methods of using empirical signal data to estimate a current location of a wireless terminal. Certain embodiments of the '278 Patent teach building a location-trait database and trait correction database, comprising the partitioning of a geographic region into a plurality of locations and ascertaining specific traits for each of those locations. '278 Patent at Fig. 5, 7:4-11.

52.    Some exemplary embodiments further teach comparing the given traits against current time and environmental conditions to provide an expected value of each location, while also assessing adjacent location values and the staying power over time of those values. '278 Patent at 7:62-67. Such exemplary embodiments also comprise the later correction and maintenance of those values and comparison to input values to estimate a location. '278 Patent at 15:42-54.

53.    **The '726 Patent** is entitled "Computationally Efficient Estimation of the Location of a Wireless Terminal Based on Pattern Matching" and claims priority to provisional U.S. Patent Application No. 60/757,066, filed on January 6, 2006.

54.    Location estimation may require considering a variety of input data, and due to the potential for numerous inputs, it is advantageous to combine different data inputs when forming an estimate of location, particularly where some of those inputs are limited. The '726 Patent describes methods for generating location-specific data through processing a combination of data.

55.    The inventions claimed by the '726 Patent provide concrete solutions to the technical problems faced by combining several sources of location estimation data. In some embodiments, the '762 Patent describes receiving collections of traits that may be compared to data sets comprising the expected pathloss of signals, the signal-to-impairment ratio of signals, the temporal difference of each pair of multipath components, the received delay speed of signals, the relative arrival times of two or more multipath components, the round-trip time of all the signals,

the identity of base stations and neighboring base stations, and the handover states of wireless terminals. '762 Patent at 9:45-11:13. The '762 Patent teaches that each of these data components has advantages and disadvantages, and that multiple of these inputs can be used with a particular wireless terminal for estimating its location. '762 Patent at 16:49-17:40. In some exemplary embodiments, the '762 Patent teaches specific comparisons of several data points, such as multiple signal strength measurements and differential signal strength values. '762 Patent at 18:33-53.

56.    The '762 Patent also teaches that a potential drawback of generating multi-dimensional probability distributions of possible locations is that the process can be computationally intensive. The '762 Patent thus describes specific computational steps of eliminating potential locations from consideration where it can be summarily assessed there is a low or zero probability that the wireless terminal is at these locations. '762 Patent at 19:14-41. In some embodiments, these specific steps include designating certain locations as improbable and thus removing them from further computation where those locations, for example, would not have allowed the wireless terminal to receive a measurement of a signal, or when a location is not served by a base station that is providing service to the wireless terminal, or when a plurality of measurements of a trait differ from the ranking of the expected values for that trait. '762 Patent at Fig. 11b, 19:33-41.

57.    **The '987 Patent** is titled "Location estimation of wireless terminals through pattern matching of deduced and empirical signal-strength measurements" and claims priority to U.S. Provisional Patent Application No. 60/488,866, filed on July 19, 2003.

58.    Signal strength of a signal from a wireless transmitter differs at some locations. It is thus desirable to estimate the location of a wireless terminal via comparison of observed signal strengths against a map or database that correlates locations to signal strengths. The accuracy of

the estimate of the location of a wireless terminal can be enhanced when the wireless terminal observes multiple transmitters or access points and multiple signals with varying signal strengths.

59.    Generally, more signal-strength measurements provide a better estimate of the location of the wireless terminal than fewer signal-strength measurements. A typical way of acquiring additional signal-strength measurements is to actually physically measure a signal at the wireless terminal. '987 Patent at 3:51-60. But another way to measure signal strength is by deduction based on other information. '987 Patent at 3:61-63.

60.    The '987 patent teaches concrete processes for estimating a location of a wireless terminal using both physical signal-strength measurements and deductions from other information. Sometimes there are reasons a wireless terminal is unable to physically measure the strength of a signal transmitted from an access point. In one embodiment, the wireless terminal deduces the signal-strength of a transmitter or access point based on the principle of reciprocity—that is, even if the wireless terminal is unable to physically measure the signal-strength via an access point transmission, it can deduce that signal strength if it is able to transmit signals to the access point. '987 Patent at 3:65-4:7.

61.    Another embodiment teaches that deduced signal strengths from the transmission of signals from a wireless terminal to an access point can be used alone or in combination with empirical signal-strength measurements to estimate the location of the wireless terminal. '987 Patent at 4:41-52. This could include, for example, pattern matching the signal strength measurements for the deduced and/or empirically measured data against a map that correlates signal-strength measurements and locations. '987 Patent at 4:41-52; Claim 1.

62.    **The '423 Patent** is titled "Estimating the elevation of a wireless terminal based on temperature and atmospheric pressure" and claims priority to U.S. Provisional Patent Application No. 62/033,968, filed on August 6, 2014.

63.    It is often desired to estimate not only the lateral location of a wireless terminal, but its vertical location as well. For example, when a call is made to E911 services from within a tall building to report a fire, EMS will attempt to identify the caller's location, including the specific building floor, based on the wireless terminal the call came from. This location estimate needs to be accurate, but previous methods of using atmospheric pressure measurements to estimate height can be wrong by many floors of a building. One of the causes of this inaccuracy is atmospheric "stack effect" common in tall buildings and structures, which causes the relationship between atmospheric pressure and elevation to be different than those predicted by a typical elevation calculation.

64.    The '423 Patent teaches concrete processes for estimating the elevation of a wireless terminal in a tall building or structure while avoiding some of the drawbacks in the prior art. In one embodiment, the '423 Patent recites specific steps for generating an estimate of elevation of a wireless terminal based on a lateral-location estimate and barometric pressure measurement at the wireless terminal. One embodiment involves comparing the pressure reading to a stack-effect compensation model selected based on lateral location. '423 Patent at 9:53-67.

65.    Other specific steps include, for example, delimiting a geographic region in a GIS database to account for the number, size, height, and shape of structures for later comparison to received radio signal and barometric pressure information. '423 Patent at 10:17-28.

66.    The '423 Patent also teaches, in an exemplary embodiment, collecting radio signal and barometric pressure information, temperature information at the wireless terminal,

COMPLAINT FOR PATENT INFRINGEMENT                                              Page 18

temperature information at a nearby weather station, and using this information in conjunction with previously-collected neutral pressure plane information for a given structure. '423 Patent at 12:16-40.

67.    **The '811 Patent** is titled "Estimating the Lateral Location of a Wireless Terminal Based on Temperature and Atmospheric Pressure" and claims priority to U.S. Provisional Patent Application No. 62/033,968, filed on August 6, 2014.

68.    In the process of estimating locations, some three-dimensional locations of wireless terminals are improbable given measurements of temperature and/or atmospheric pressure. The '811 Patent utilizes this improbability to make improvements in lateral location estimates, including through specific steps that narrow a plurality of possible locations based on empirical data and thereby reduce the costs to estimate a location while improving the accuracy of the resulting estimate.

69.    The '811 Patent recites specific steps of designating some of a plurality of possible lateral locations as improbable based on atmospheric pressure. These steps include, in an exemplary embodiment, comparing the combination of atmospheric pressure and possible lateral locations to an index of elevations stored in a database, including the elevation data of specific buildings in a geographic area. '811 Patent at 11:26-66. Through such comparison, many possible locations can be eliminated from consideration, such as buildings that have an overall height lower than the suggested elevation of the wireless terminal.

70.    The '811 Patent also recites specific steps for collecting other information such as temperature for use in estimating a location. '811 Patent at 12:23-43.

71.    Additionally, the '811 Patent recites procedures of comparing received radio signal identities against a narrowed set of possible lateral locations. '811 Patent at 9:11-17.

COMPLAINT FOR PATENT INFRINGEMENT                                        Page 19

72.     Polaris Wireless is the owner, by assignment, of all rights, title, and interest in the '166 Patent, '278 Patent, '762 Patent, '987 Patent, '423 Patent, and the '811 Patent.

## THE ACCUSED SAMSUNG FUNCTIONALITIES

73.     Samsung wireless devices that perform location-based services according to the methods claimed by the Polaris Patents are the infringing Samsung "Accused Functionalities."

74.     As one example, Samsung unveiled its launch of the SmartThings Find service on Galaxy smartphones, Galaxy tablets, and Galaxy Watch devices in October 2020, which incorporated the predecessor Find My Mobile service from Samsung.[4]



Lost your phone?
Don't panic. Find My Mobile will help you locate your phone or tablet and protect your data. You can even use it to unlock if you forget your pattern, PIN, or password.
*To use this service, you must be signed in to your Samsung account on your device.

https://findmymobile.samsung.com/

### Find My Mobile

Because many of us live a significant part of our lives through our Galaxy phones, Find My Mobile has become a necessary precaution. Use the Locate My Device function when you can't find your phone. When it's lost for sure, you have the option to remotely lock your device, block access to Samsung Pay, and even delete Samsung Pay or simply wipe data from the entire device.

### When you Can't Find Your Phone

No need to panic. Use Find My Mobile to locate your phone and make your phone ring at its maximum volume if it's nearby. And while you're still looking for it, you can remotely lock the screen to automatically lock Samsung Pay as well as the power button, and check the call logs for up to 50 missed calls. If needed, you can wipe your data completely from the device.

---

[4] *See* Samsung Newsroom, *Samsung Launches SmartThings Find, a New Way to Quickly and Easily Locate Your Galaxy Devices*, Oct. 30, 2020, *available at* https://news.samsung.com/global/samsung-launches-smartthings-find-a-new-way-to-quickly-and-easily-locate-your-galaxy-devices?utm_source=chatgpt.com.

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 20

### Requirements

\* To use the 'Find My Mobile' service,

1) You must have set up your Samsung account on your device.

2) You allow Google to collect your location information and agree to the 'Use wireless networks' term and conditions.

https://www.samsung.com/us/support/owners/app/find-my-mobile

### *Part of the SmartThings app, SmartThings Find helps you quickly find your connected Galaxy devices, using BLE and UWB technologies*

Samsung Electronics today announced the launch of SmartThings Find, a new service[1] that helps you quickly and easily locate Galaxy devices.[2] After 6 million[3] users across Korea, the U.K. and U.S. signed up for early access to the service, SmartThings Find is ready for a global launch on devices running Android 8 or later. SmartThings Find uses Bluetooth Low Energy (BLE)[4] and ultra-wideband (UWB)[5] technologies to help people find select Galaxy smartphones, tablets, smartwatches and earbuds.

https://news.samsung.com/global/samsung-launches-smartthings-find-a-new-way-to-quickly-and-easily-locate-your-galaxy-devices?utm_source=chatgpt.com

75.    The SmartThings app has over 1 billion downloads, over 3.6 million reviews, and lists the developer as Samsung Electronics Co., Ltd.[5] Reviews of the app are met with responses from "Samsung Electronics Co. Ltd.," such as a September 1, 2025 response asking for more details on a reported issue, saying "We'll pass it along to our development team to see if there is any way we can improve it." *Id.*

76.    As another example, Samsung offers a Knox Asset Intelligence feature that provides "a robust asset tracking solution that allows you view the indoor and outdoor location of your devices in real time."[6]

---

[5]https://play.google.com/store/apps/details?id=com.samsung.android.oneconnect&hl=en_US&pl i=1

[6] https://docs.samsungknox.com/admin/knox-asset-intelligence/dashboard/location-dashboard/location-overview/.

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 21



https://www.samsungknox.com/en/solutions/it-solutions/knox-asset-intelligence

77.    The Knox Asset Intelligence app likewise lists the developer as "Samsung Electronics Co., Ltd."[7]

78.    Samsung Galaxy devices perform both XY and Z-location services using wireless signals, including one or more of GPS, Wi-Fi, and mobile network infrastructure such as cellular towers or base stations.

---

[7] https://play.google.com/store/apps/details?id=com.samsung.android.knox.dai&hl=en_US. *See also* https://www.samsung.com/us/business/software/knox/knox-manage/knox-asset-intelligence-2-year-mi-kxkiswwc220/ (offering licenses to "Knox Asset Intelligence" with a copyright to "Samsung Electronics America").

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 22



https://www.samsung.com/ph/support/mobile-devices/how-to-activate-my-location-and-change-settings-for-location-permissions/

79.    Samsung Galaxy devices further incorporate various chips and sensors that receive and process these wireless signals and other inputs like barometric pressure in order to calculate the location of the Samsung Galaxy devices.

**Connectivity**

| **Wi-Fi Connectivity** | | **USB** | | **Bluetooth®** |
|---|---|---|---|---|
| 802.11a/b/g/n/ac/ax/be 2.4GHz+5GHz+6GHz, EHT320, MIMO, 4096-QAM | | USB 3.2 Gen 1 | | Bluetooth v5.4 |
| **Location Technology** | | **Earjack** | | **MHL** |
| GPS,Glonass,Beidou,Galileo | | USB Type-C | | No |
| **Wi-Fi Direct** | | **NFC** | | **PC Sync.** |
| Yes | | Yes | | Smart Switch (PC version) |

https://www.samsung.com/us/smartphones/galaxy-s25/buy/galaxy-s25-plus-512gb-unlocked-sm-s936udbexaa/

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 23

## Sensor Type

**Type**

Accelerometer,Barometer,Fingerprint Sensor,Gyro
Sensor,Geomagnetic Sensor,Hall Sensor,Light
Sensor,Proximity Sensor

https://www.samsung.com/us/smartphones/galaxy-s25/buy/galaxy-s25-plus-512gb-unlocked-sm-s936udbexaa/

80.     In addition to using GPS, Samsung Galaxy devices perform location-based services by using Wi-Fi and cellular chipsets embedded into Samsung Galaxy devices. These chipsets measure and process traits or characteristics of a downlink wireless signal received from various access points such as cellular base stations or Wi-Fi routers. On information and belief, the Samsung Galaxy devices can also transmit signals to access points and, in certain circumstances, use those transmitted signal measurements to deduce access point signal strength. The Samsung Galaxy devices can then perform calculations or comparisons of these measurements, such as Received Signal Strength Indicator ("RSSI"), Round-Trip Time ("RTT"), and/or Signal-to-Noise Ratio ("SNR").

## Activate location services on your phone

To use location-based services and apps like Google maps on your Galaxy phone, you need to enable your device's GPS location settings. Your device may use a combination of Wi-Fi, GPS, and mobile networks to determine your location and even get help if your phone is lost or otherwise. Follow the steps below to enable your location services settings.

**Step 1.** Launch the **Settings** app, and then select **Location**.

**Step 2.** If the switch at the top is **Off**, turn it **On**.

Alternatively, you can swipe down on the screen to bring up the **Quick panel**, and then tap the **Location** icon to enable or disable location services.

 

https://www.samsung.com/ph/support/mobile-devices/how-to-activate-my-location-and-change-settings-for-location-permissions/

Roaming is a term used to describe when a device goes out of range of one Access Point (AP) and shifts Wi-Fi network association to the next available AP within the same Extended Service Set (ESS) without losing connection.



There are 3 factors that trigger roaming on a Samsung mobile device:

1. **Weak signal** — Mobile devices trigger a roaming scan to avoid frequent retransmissions from lost packets. When the current AP's Received Signal Strength Indicator (RSSI) value is weak (below -75dBm), the device searches for an AP with a stronger signal.

2. **Beacon loss** — When beacon packets from a connected AP isn't received after 2 seconds (6 second if the display is OFF), the mobile device considers it a lost beacon and triggers a roaming scan.

3. **Channel Utilization (CU)** — When multiple clients are connected to the same AP, connectivity may be hindered despite having a strong radio signal due to limited resources. In which case, the AP will notify the clients of its current traffic through the CU factor in its beacon. The mobile device will then trigger a roaming scan if the received CU value is greater than 70 percent and the current RSSI value is between -65dBM and -75dBm.

https://docs.samsungknox.com/admin/knox-platform-for-enterprise/kbas/kba-115013403768/

# Location overview

Last updated July 26th, 2023

To help effectively manage your enterprise fleet, Knox Asset Intelligence provides a robust asset tracking solution that allows you view the indoor and outdoor location of your devices in real time. Through the **Location** dashboard, you can easily send commands to locate lost or stolen devices, send notifications to device users, or ping devices to get their last-known location.

> **Note**
>
> Indoor location tracking is currently in a **Labs** state. While it remains in this state, customers can take full advantage of the current feature set, but are limited to a select number of devices and Access Point (AP) models. Samsung will continue to enhance current features and add new functionality for customers to use during the **Labs** state.

https://docs.samsungknox.com/admin/knox-asset-intelligence/dashboard/location-dashboard/location-overview/

## Outdoor tracking

Outdoor location tracking features are GPS-based, and are available on all Knox Asset Intelligence supported devices by default. For a complete list of devices that support outdoor location tracking features, see Devices secured by Knox ↗

## Indoor tracking

Indoor location tracking features are supported by a limited number of devices. In addition to the devices, indoor location tracking also requires compatible **Access Points** (APs) in order to work. See the following list of compatible devices and Access Points:

https://docs.samsungknox.com/admin/knox-asset-intelligence/dashboard/location-dashboard/location-overview/

    3. **Location information:** Information about nearby Wi-Fi access points, cell towers, and, with your separate consent, precise geolocation, may be transmitted to us when you use certain Services. In addition, for certain Services, zip codes or postal codes and inferred locations using IP addresses may be transmitted to us when you use such Services.

https://www.samsung.com/us/account/privacy-policy/

COMPLAINT FOR PATENT INFRINGEMENT             Page 27

81.     Upon information and belief, Samsung compares the measured signal characteristics or traits with a database of known signal characteristics or traits for a particular geographic location. For instance, on information and belief, Samsung compares RSSI received from multiple access points to known or expected RSSI tuples from a location database to calculate the XY or lateral location of a Samsung Galaxy device. On further information and belief, the boundaries of the locations from the location database are based, at least in part, on empirical data such as crowdsourced access point data. On further information and belief, when performing the location calculations, Samsung designates certain possible locations of the device as improbable such as by using techniques like geographic filtering and/or signal improbability filtering, such as by eliminating potential access points from the location calculation based on signal traits or characteristics (e.g., measuring signal traits or characteristics to determine that an access point is a mobile hot spot that is not indicative of the location of the Samsung Galaxy device).

### Activate location services on your phone

To use location-based services and apps like Google maps on your Galaxy phone, you need to enable your device's GPS location settings. Your device may use a combination of Wi-Fi, GPS, and mobile networks to determine your location and even get help if your phone is lost or otherwise. Follow the steps below to enable your location services settings.

**Step 1.** Launch the **Settings** app, and then select **Location**.

**Step 2.** If the switch at the top is **Off**, turn it **On**.

Alternatively, you can swipe down on the screen to bring up the **Quick panel**, and then tap the **Location** icon to enable or disable location services.

 

https://www.samsung.com/ph/support/mobile-devices/how-to-activate-my-location-and-change-settings-for-location-permissions/

Roaming is a term used to describe when a device goes out of range of one Access Point (AP) and shifts Wi-Fi network association to the next available AP within the same Extended Service Set (ESS) without losing connection.



There are 3 factors that trigger roaming on a Samsung mobile device:

1. **Weak signal** — Mobile devices trigger a roaming scan to avoid frequent retransmissions from lost packets. When the current AP's Received Signal Strength Indicator (RSSI) value is weak (below -75dBm), the device searches for an AP with a stronger signal.

2. **Beacon loss** — When beacon packets from a connected AP isn't received after 2 seconds (6 second if the display is OFF), the mobile device considers it a lost beacon and triggers a roaming scan.

3. **Channel Utilization (CU)** — When multiple clients are connected to the same AP, connectivity may be hindered despite having a strong radio signal due to limited resources. In which case, the AP will notify the clients of its current traffic through the CU factor in its beacon. The mobile device will then trigger a roaming scan if the received CU value is greater than 70 percent and the current RSSI value is between -65dBM and -75dBm.

https://docs.samsungknox.com/admin/knox-platform-for-enterprise/kbas/kba-115013403768/

# Location overview

Last updated July 26th, 2023

To help effectively manage your enterprise fleet, Knox Asset Intelligence provides a robust asset tracking solution that allows you view the indoor and outdoor location of your devices in real time. Through the **Location** dashboard, you can easily send commands to locate lost or stolen devices, send notifications to device users, or ping devices to get their last-known location.

> **Note**
>
> Indoor location tracking is currently in a **Labs** state. While it remains in this state, customers can take full advantage of the current feature set, but are limited to a select number of devices and Access Point (AP) models. Samsung will continue to enhance current features and add new functionality for customers to use during the **Labs** state.

https://docs.samsungknox.com/admin/knox-asset-intelligence/dashboard/location-dashboard/location-overview/

## Outdoor tracking

Outdoor location tracking features are GPS-based, and are available on all Knox Asset Intelligence supported devices by default. For a complete list of devices that support outdoor location tracking features, see Devices secured by Knox ↗

## Indoor tracking

Indoor location tracking features are supported by a limited number of devices. In addition to the devices, indoor location tracking also requires compatible **Access Points** (APs) in order to work. See the following list of compatible devices and Access Points:

https://docs.samsungknox.com/admin/knox-asset-intelligence/dashboard/location-dashboard/location-overview/

   3. **Location information:** Information about nearby Wi-Fi access points, cell towers, and, with your separate consent, precise geolocation, may be transmitted to us when you use certain Services. In addition, for certain Services, zip codes or postal codes and inferred locations using IP addresses may be transmitted to us when you use such Services.

https://www.samsung.com/us/account/privacy-policy/

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 31

82.    Samsung further performs methods to calculate the location of Samsung Galaxy devices by incorporating third-party APIs into its location-based services.



https://www.samsung.com/uk/support/mobile-devices/what-to-do-when-gps-is-not-working-properly-on-android-mobile-device/

**Wi-Fi scanning and Bluetooth Scanning settings to improve accuracy**

- **Wi-Fi scanning**: Let apps use Wi-Fi for more accurate location detection, even when Wi-Fi is off.
- **Bluetooth Scanning**: Let apps use Bluetooth for more accurate location detection, even when Bluetooth is off.



https://www.samsung.com/uk/support/mobile-devices/what-to-do-when-gps-is-not-working-properly-on-android-mobile-device/

# How Location Accuracy improves location

To improve device location, Android devices with Google Play services have a Location Accuracy service (formerly Google Location Services). It uses information from wireless signals, such as Wi-Fi access points, cellular network towers, and GPS, along with device sensor data, such as accelerometer, barometer and gyroscope, to allow your device to more quickly and accurately estimate device location, particularly in areas where GPS may be unavailable or obscured, such as indoors or near large buildings.

**Important:** Not all devices have wireless signals, GPS, or device sensor data. Location Accuracy uses available signals to estimate location.

https://www.samsung.com/uk/support/mobile-devices/what-to-do-when-gps-is-not-working-properly-on-android-mobile-device/

## When Location Accuracy is on

When Location Accuracy is turned on, your device uses these sources to get the most accurate location, which may include elevation or floor level:

- Wireless signals, if available, such as:
  - GPS
  - Wi-Fi
  - Mobile cellular networks
- Sensors, if available, such as:
  - Accelerometer
  - Barometer
  - Gyroscope

https://support.google.com/android/answer/15157297



# Location 🔖 ▾

Added in API level 1

Kotlin | **Java**

```
public class Location
extends Object implements Parcelable
```

java.lang.Object
  ↳ android.location.Location

A data class representing a geographic location. A location consists of a latitude, longitude, timestamp, accuracy, and other information such as bearing, altitude and velocity.

All locations generated through `LocationManager` are guaranteed to have a valid latitude, longitude, timestamp (both Unix epoch time and elapsed realtime since boot), and accuracy. All other parameters are optional.

https://developer.android.com/reference/android/location/Location

## Simple, battery-efficient location API for Android

Apps can take advantage of the signals provided by multiple sensors in the device to determine device location. However, choosing the right combination of signals for a specific task in different conditions is not simple. Finding a solution that is also battery-efficient is even more complicated.

The fused location provider is a location API in Google Play services that intelligently combines different signals to provide the location information that your app needs.

The fused location provider manages the underlying location technologies, such as GPS and Wi-Fi, and provides a simple API that you can use to specify the required quality of service. For example, you can request the most accurate data available, or the best accuracy possible with no additional power consumption.



https://developers.google.com/location-context/fused-location-provider

## Support for common location scenarios

**Last Known Location**

Using the fused location provider API, your app can request the last known location of the user's device. Getting the last known location is usually a good starting point for apps that require location information.

**Location Settings**

When requesting location information many different location sources, such as GPS and Wi-Fi, are used. Deciding which sources to use can be challenging, but the fused location provider API removes the guesswork by automatically changing the appropriate system settings. All your app must do is specify the desired level of service.

**Location Updates**

In addition to the last known location, the fused location provider API can deliver location updates to a callback in your app at specific intervals. You can specify the desired interval as a parameter of the quality of service. By using location updates, your app can provide additional information such as direction and velocity.

https://developers.google.com/location-context/fused-location-provider

# Change location settings 🔖 ▾

If your app needs to request location or receive permission updates, the device needs to enable the appropriate system settings, such as GPS or Wi-Fi scanning. Rather than directly enabling services such as the device's GPS, your app specifies the required level of accuracy/power consumption and desired update interval, and the device automatically makes the appropriate changes to system settings. These settings are defined by the `LocationRequest` data object.

This lesson shows you how to use the Settings Client to check which settings are enabled, and present the Location Settings dialog for the user to update their settings with a single tap.

https://developer.android.com/develop/sensors-and-location/location/change-location-settings

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 35

# Request location updates 🔖 ▾

Appropriate use of location information can be beneficial to users of your app. For example, if your app helps the user find their way while walking or driving, or if your app tracks the location of assets, it needs to get the location of the device at regular intervals. As well as the geographical location (latitude and longitude), you may want to give the user further information such as the bearing (horizontal direction of travel), altitude, or velocity of the device. This information, and more, is available in the `Location` object that your app can retrieve from the fused location provider. In response, the API updates your app periodically with the best available location, based on the currently-available location providers such as WiFi and GPS (Global Positioning System). The accuracy of the location is determined by the providers, the location permissions you've requested, and the options you set in the location request.

This lesson shows you how to request regular updates about a device's location using the `requestLocationUpdates()` method in the fused location provider.

https://developer.android.com/develop/sensors-and-location/location/request-updates

83. Samsung further calculates the elevation, or Z-location, of a Samsung Galaxy device using both the aforementioned methods for calculating lateral location, as well as barometric or atmospheric pressure as measured through barometric sensors embedded in Samsung Galaxy devices. In performing this elevation or vertical location calculation, on information and belief, Samsung designates one or more possible locations as improbable based on the barometric pressure measurements (e.g., to discount locations where a device reads an atmospheric pressure that indicates it is located in an uninhabitable location, for instance high above the ground and not within a building).

## Activate location services on your phone

To use location-based services and apps like Google maps on your Galaxy phone, you need to enable your device's GPS location settings. Your device may use a combination of Wi-Fi, GPS, and mobile networks to determine your location and even get help if your phone is lost or otherwise. Follow the steps below to enable your location services settings.

**Step 1.** Launch the **Settings** app, and then select **Location**.

**Step 2.** If the switch at the top is **Off**, turn it **On**.

Alternatively, you can swipe down on the screen to bring up the **Quick panel**, and then tap the **Location** icon to enable or disable location services.




https://www.samsung.com/ph/support/mobile-devices/how-to-activate-my-location-and-change-settings-for-location-permissions/

Roaming is a term used to describe when a device goes out of range of one Access Point (AP) and shifts Wi-Fi network association to the next available AP within the same Extended Service Set (ESS) without losing connection.



There are 3 factors that trigger roaming on a Samsung mobile device:

1. **Weak signal** — Mobile devices trigger a roaming scan to avoid frequent retransmissions from lost packets. When the current AP's Received Signal Strength Indicator (RSSI) value is weak (below -75dBm), the device searches for an AP with a stronger signal.

2. **Beacon loss** — When beacon packets from a connected AP isn't received after 2 seconds (6 second if the display is OFF), the mobile device considers it a lost beacon and triggers a roaming scan.

3. **Channel Utilization (CU)** — When multiple clients are connected to the same AP, connectivity may be hindered despite having a strong radio signal due to limited resources. In which case, the AP will notify the clients of its current traffic through the CU factor in its beacon. The mobile device will then trigger a roaming scan if the received CU value is greater than 70 percent and the current RSSI value is between -65dBM and -75dBm.

https://docs.samsungknox.com/admin/knox-platform-for-enterprise/kbas/kba-115013403768/

# Location overview

Last updated July 26th, 2023

To help effectively manage your enterprise fleet, Knox Asset Intelligence provides a robust asset tracking solution that allows you view the indoor and outdoor location of your devices in real time. Through the **Location** dashboard, you can easily send commands to locate lost or stolen devices, send notifications to device users, or ping devices to get their last-known location.

> **Note**
>
> Indoor location tracking is currently in a **Labs** state. While it remains in this state, customers can take full advantage of the current feature set, but are limited to a select number of devices and Access Point (AP) models. Samsung will continue to enhance current features and add new functionality for customers to use during the **Labs** state.

https://docs.samsungknox.com/admin/knox-asset-intelligence/dashboard/location-dashboard/location-overview/

## Outdoor tracking

Outdoor location tracking features are GPS-based, and are available on all Knox Asset Intelligence supported devices by default. For a complete list of devices that support outdoor location tracking features, see Devices secured by Knox ↗

## Indoor tracking

Indoor location tracking features are supported by a limited number of devices. In addition to the devices, indoor location tracking also requires compatible **Access Points** (APs) in order to work. See the following list of compatible devices and Access Points:

https://docs.samsungknox.com/admin/knox-asset-intelligence/dashboard/location-dashboard/location-overview/

3. **Location information:** Information about nearby Wi-Fi access points, cell towers, and, with your separate consent, precise geolocation, may be transmitted to us when you use certain Services. In addition, for certain Services, zip codes or postal codes and inferred locations using IP addresses may be transmitted to us when you use such Services.

https://www.samsung.com/us/account/privacy-policy/

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 39

## Sensor Type

**Type**

Accelerometer,Barometer,Fingerprint Sensor,Gyro
Sensor,Geomagnetic Sensor,Hall Sensor,Light
Sensor,Proximity Sensor

https://www.samsung.com/us/smartphones/galaxy-s25/buy/galaxy-s25-plus-512gb-unlocked-sms936udbexaa/

84.     Samsung further performs methods to calculate the vertical location of Samsung

Galaxy devices by incorporating third-party APIs into its location-based services.

## When Location Accuracy is on

When Location Accuracy is turned on, your device uses these sources to get the most accurate
location, which may include elevation or floor level:

- Wireless signals, if available, such as:
  - GPS
  - Wi-Fi
  - Mobile cellular networks
- Sensors, if available, such as:
  - Accelerometer
  - Barometer
  - Gyroscope

https://support.google.com/android/answer/15157297

| | |
|---|---|
| 36:25 | Yeah, certainly, it's gotten a lot better with barometer. It's getting a lot better for 911. |
| 36:31 | The actual altitude is a lot more available than it was a couple of years ago. It used to be if you had GPS, the location |
| 36:38 | object that you would get through your APIs would have an altitude in it. If it came from indoors, it wouldn't. That's something that changed over the last couple of years. |
| 36:46 | Pretty much, we still don't get location if all you've got is cell, or altitude if all you've got is cell location. |
| 36:53 | We'll only give you a 2D location for a cell tower location. But if you get a Wi-Fi location, we have begun to crowdsource and understand |
| 36:59 | the altitudes of those. And so we actually will output the altitude of those. Right now, it's still in meters. |
| 37:06 | And we can do it above sea level, but we don't quite have above the ground floor yet. And that will be useful for app developers, right? |
| 37:12 | Let's say you're a rideshare app. You might want to prompt the user if they're on the seventh floor to start moving down |
| 37:17 | more than two minutes before their rideshare arrives. But if they're already on the street, no need to nag them until they're right there. |

https://www.youtube.com/watch?v=OF5QxcOIDo0

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 41

https://www.android.com/safety/emergency-help/emergency-location-service/how-it-works/



https://www.android.com/safety/emergency-help/emergency-location-service/how-it-works/

## COUNT I: INFRINGEMENT OF THE '166 PATENT

85.     Polaris Wireless adopts and incorporates by reference the allegations set forth in ¶¶ 1-84.

86.     Samsung directly infringes, either individually or jointly through acts of third parties at Samsung's direction and control, at least claim 1 of the '166 Patent by performing the steps set forth in that claim.

87.     For example, Samsung, alone or in combination with its controlled third-party vendors, performs a method for estimating a location of a wireless terminal, such as a Samsung Galaxy device. *See, e.g.*, ¶¶ 73-78. Samsung, alone and/or through a third party at Samsung's direction and control, receives a first signal-strength measurement for a first signal at the wireless terminal. *See, e.g.*, ¶¶ 78-80, 82. Samsung, alone and/or through a third party at Samsung's direction and control, further receives a second signal-strength measurement for a second signal at the wireless terminal, wherein the first signal is transmitted by a first transmitter at a first location and the second signal is transmitted by a second transmitter at a second location that is different from the first location. *See, e.g.*, ¶¶ 78-80, 82. Samsung, alone and/or through a third party at Samsung's direction and control, further estimates the location of the wireless terminal by pattern matching the difference of the first signal-strength measurement minus the second signal-strength measurement against a signal-strength database that associates location with tuples of first signal signal-strength measurements and second signal signal-strength measurements. *See, e.g.*, ¶¶ 81-82.

88.     Alternatively, or in addition to its direct infringement, Samsung actively encourages third-party vendors to infringe through the manner described above. Despite knowing of the Polaris Patents, Samsung has and continues to actively induce its third-party vendors to perform the steps of at least claim 1 of the '116 Patent. Samsung encourages this infringement

with a specific intent to cause its third-party vendors to infringe. Samsung's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

89.    Samsung's infringement of the '116 Patent has been, is, and continues to be willful, including Samsung's infringement of at least claim 1 as described at ¶¶ 31-42.

## COUNT II: INFRINGEMENT OF THE '278 PATENT

90.    Polaris Wireless adopts and incorporates by reference the allegations set forth in ¶¶ 1-89.

91.    Samsung directly infringes, either individually or jointly through acts of third parties at Samsung's direction and control, at least claim 1 of the '278 Patent by performing the steps set forth in that claim.

92.    For example, Samsung, alone or in combination with its controlled third-party vendors, performs a method for estimating a location of a wireless terminal in an environment, such as a Samsung Galaxy device. *See, e.g.*, ¶¶ 73-78. Samsung, alone and/or through a third party at Samsung's direction and control, estimates the location of the wireless terminal based on comparing a measurement of a trait of a signal processed by said wireless terminal to an expected value of said trait for one or more of a plurality of locations. *See, e.g.*, ¶¶ 78-82. Samsung, alone and/or through a third party at Samsung's direction and control, further performs this comparison to the expected value of said trait for one or more of a plurality of locations, wherein the boundaries of one or more of these locations are based, at least in part, on empirical data regarding the location of individuals in said environment. *See, e.g.*, ¶¶ 78-82.

93.    Alternatively, or in addition to its direct infringement, Samsung actively encourages third-party vendors to infringe through the manner described above. Despite knowing of the Polaris Patents, Samsung has and continues to actively induce its third-party vendors to

COMPLAINT FOR PATENT INFRINGEMENT                                                    Page 44

perform the steps of at least claim 1 of the '278 Patent. Samsung encourages this infringement with a specific intent to cause its third-party vendors to infringe. Samsung's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

94.    Samsung's infringement of the '278 Patent has been, is, and continues to be willful, including Samsung's infringement of at least claim 1 as described at ¶¶ 31-42.

## COUNT III: INFRINGEMENT OF THE '762 PATENT

95.    Polaris Wireless adopts and incorporates by reference the allegations set forth in ¶¶ 1-94.

96.    Samsung directly infringes, either individually or jointly through acts of third parties at Samsung's direction and control, at least claim 1 of the '762 Patent by performing the steps set forth in that claim.

97.    For example, Samsung, alone or in combination with its controlled third-party vendors, performs a method for estimating a location of a wireless terminal, such as a Samsung Galaxy device. *See, e.g.*, ¶¶ 73-78. Samsung, alone and/or through a third party at Samsung's direction and control, receives a measurement of a characteristic of a signal that is processed by a wireless terminal. *See, e.g.*, ¶¶ 78-80, 82. Samsung, alone and/or through a third party at Samsung's direction and control, further designates, based on the identity of the signal, at least one of a plurality of possible locations of the wireless terminal as improbable. *See, e.g.*, ¶¶ 81-82. Samsung, alone and/or through a third party at Samsung's direction and control, further designates, based on the measurement of the characteristic of the signal, at least one of the plurality of possible locations of the wireless terminal as improbable. *See, e.g.*, ¶¶ 81-82. Samsung, alone and/or through a third party at Samsung's direction and control, further estimates the location of the wireless terminal based on a comparison of the measurement of the characteristic of the signal to a predicted value

of the characteristic of the signal for at least one of the plurality of possible locations not designated as improbable. *See, e.g.*, ¶¶ 81-82.

98.    Alternatively, or in addition to its direct infringement, Samsung actively encourages third-party vendors to infringe through the manner described above. Despite knowing of the Polaris Patents, Samsung has and continues to actively induce its third-party vendors to perform the steps of at least claim 1 of the '762 Patent. Samsung encourages this infringement with a specific intent to cause its third-party vendors to infringe. Samsung's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

99.    Samsung's infringement of the '762 Patent has been, is, and continues to be willful, including Samsung's infringement of at least claim 1 as described at ¶¶ 31-42.

## COUNT IV: INFRINGEMENT OF THE '987 PATENT

100.    Polaris Wireless adopts and incorporates by reference the allegations set forth in ¶¶ 1-99.

101.    Samsung directly infringes, either individually or jointly through acts of third parties at Samsung's direction and control, at least claim 1 of the '987 Patent by performing the steps set forth in that claim.

102.    For example, Samsung, alone or in combination with its controlled third-party vendors, performs a method for estimating the location of a wireless terminal, such as a Samsung galaxy device. *See, e.g.*, ¶¶ 73-78. Samsung, alone and/or through a third party at Samsung's direction and control, receives a signal-strength measurement for a first downlink signal that is received by a wireless terminal and a signal-strength measurement for an uplink signal that is transmitted by said wireless terminal. *See, e.g.*, ¶¶ 78-80, 82. Samsung, alone and/or through a third party at Samsung's direction and control, estimates the location of said wireless terminal

based on said signal-strength measurement for said first downlink signal and on said signal-strength measurement for said uplink signal. *See, e.g.*, ¶¶ 81-82. Samsung, alone and/or through a third party at Samsung's direction and control, estimates the location of the wireless terminal by pattern matching said signal-strength measurement for said downlink signal against a map that correlates signal-strength measurements and location. *See, e.g.*, ¶¶ 81-82.

103.    Alternatively, or in addition to its direct infringement, Samsung actively encourages third-party vendors to infringe through the manner described above. Despite knowing of the Polaris Patents, Samsung has and continues to actively induce its third-party vendors to perform the steps of at least claim 1 of the '987 Patent. Samsung encourages this infringement with a specific intent to cause its third-party vendors to infringe. Samsung's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

104.    Samsung's infringement of the '987 Patent has been, is, and continues to be willful, including Samsung's infringement of at least claim 1 as described at ¶¶ 31-42.

### COUNT V: INFRINGEMENT OF THE '423 PATENT

105.    Polaris Wireless adopts and incorporates by reference the allegations set forth in ¶¶ 1-104.

106.    Samsung directly infringes, either individually or jointly through acts of third parties at Samsung's direction and control, at least claim 13 of the '423 Patent by performing the steps set forth in that claim.

107.    For example, Samsung, alone or in combination with its controlled third-party vendors, performs a method for estimating the elevation of a wireless terminal, such as a Samsung Galaxy device. *See, e.g.*, ¶¶ 73-78, 83. Samsung, alone and/or through a third party at Samsung's direction and control, receives, at a data processing system, the identity of a radio signal as received

by a wireless terminal. *See, e.g.*, ¶¶ 78-80, 82. Samsung, alone and/or through a third party at Samsung's direction and control, further receives, at the data processing system, a measurement of barometric pressure at the wireless terminal. *See, e.g.*, ¶¶ 83-84. Samsung, alone and/or through a third party at Samsung's direction and control, further generates an estimate of the lateral location of the wireless terminal based on the identity of the radio signal. *See, e.g.*, ¶¶ 81-82. Samsung, alone and/or through a third party at Samsung's direction and control, further generates an estimate of the elevation of the wireless terminal based on the estimate of the lateral location of the wireless terminal and the measurement of barometric pressure at the wireless terminal. *See, e.g.*, ¶¶ 81-84.

108.    Alternatively, or in addition to its direct infringement, Samsung actively encourages third-party vendors to infringe through the manner described above. Despite knowing of the Polaris Patents, Samsung has and continues to actively induce its third-party vendors to perform the steps of at least claim 13 of the '423 Patent. Samsung encourages this infringement with a specific intent to cause its third-party vendors to infringe. Samsung's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

109.    Samsung's infringement of the '423 Patent has been, is, and continues to be willful, including Samsung's infringement of at least claim 13 as described at ¶¶ 31-42.

110.    Polaris Wireless has been and will continue to be irreparably harmed by Samsung's infringing acts, requiring the entry of a permanent injunction to prevent Samsung's further infringement of the '423 Patent because Polaris Wireless does not have another adequate remedy at law.

### COUNT VI: INFRINGEMENT OF THE '811 PATENT

111.    Polaris Wireless adopts and incorporates by reference the allegations set forth in ¶¶ 1-110.

112.    Samsung directly infringes, either individually or jointly through acts of third parties at Samsung's direction and control, at least claim 7 of the '811 Patent by performing the steps set forth in that claim.

113.    For example, Samsung, alone or in combination with its controlled third-party vendors, performs a method of estimating the lateral location of a wireless terminal. *See, e.g.*, ¶¶ 73-78. Samsung, alone and/or through a third party at Samsung's direction and control, receives, at a data processing system, a measurement of a location-dependent trait of a radio signal as received by a wireless terminal. *See, e.g.*, ¶¶ 78-80, 82. Samsung, alone and/or through a third party at Samsung's direction and control, further receives, at the data processing system, a measurement of atmospheric pressure at the wireless terminal. *See, e.g.*, ¶¶ 83-84. Samsung, alone and/or through a third party at Samsung's direction and control, further designates at least one of a plurality of possible lateral locations of the wireless terminal as improbable. *See, e.g.*, ¶¶ 81-84. Samsung, alone and/or through a third party at Samsung's direction and control, further designates at least one of the possible lateral locations as improbable based on the measurement of atmospheric pressure at the wireless terminal. *See, e.g.*, ¶¶ 81-84. Samsung, alone and/or through a third party at Samsung's direction and control, further estimates the lateral location of the wireless terminal to be one of the plurality of possible lateral locations of the wireless terminal not designated as improbable based on the measurement of the location-dependent trait of the radio signal. *See, e.g.*, ¶¶ 81-84.

114.    Alternatively, or in addition to its direct infringement, Samsung actively encourages third-party vendors to infringe through the manner described above. Despite knowing of the Polaris Patents, Samsung has and continues to actively induce its third-party vendors to perform the steps of at least claim 7 of the '811 Patent. Samsung encourages this infringement

with a specific intent to cause its third-party vendors to infringe. Samsung's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

115.    Samsung's infringement of the '811 Patent has been, is, and continues to be willful, including Samsung's infringement of at least claim 7 as described at ¶¶ 31-42.

116.    Polaris Wireless has been and will continue to be irreparably harmed by Samsung's infringing acts, requiring the entry of a permanent injunction to prevent Samsung's further infringement of the '811 Patent because Polaris Wireless does not have another adequate remedy at law.

## JURY DEMAND

117.    Polaris Wireless demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Polaris Wireless requests entry of a judgment in its favor and against Samsung as follows:

a)    Judgment that Samsung has directly and/or indirectly infringed one or more claims of the Polaris Patents;

b)    An award of damages to compensate for Samsung's infringement, including damages pursuant to 35 U.S.C. § 284, as well as prejudgment and post-judgment interest;

c)    An award of costs and expenses in this action, including an award of Polaris Wireless's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

d)    A permanent injunction restraining and enjoining Samsung, and its respective officers, agents, servants, employees, attorneys, and those persons or entities in active concert or participation with Samsung who receive actual notice of the order

by personal service or otherwise, from any further sales or use of their infringing products and/or services and any other infringement of the '423 Patent and the '811 Patent;

e)  A finding that Samsung has willfully infringed and is willfully infringing one or more claims of the Polaris Patents;

f)  A finding that this case is an exceptional case, and awarding treble damages due to Samsung's deliberate and willful conduct, and ordering Samsung to pay Polaris Wireless's costs of suit and attorneys' fees; and

g)  For such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

Dated: September 29, 2025                    Respectfully submitted,

*/s/ Ryan D. Dykal*
Ryan D. Dykal (MO State Bar No. 60905)
Jordan Bergsten (*pro hac vice* forthcoming)
Mark D. Schafer (*pro hac vice* forthcoming)
Philip Eckert (*pro hac vice* forthcoming)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
(t): 202-274-1109
rdykal@bsfllp.com
jbergsten@bsfllp.com
mschafer@bsfllp.com
peckert@bsfllp.com

Carolyn Drell (*pro hac vice* forthcoming)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
(t): 914-749-8327
cdrell@bsfllp.com

***Counsel for Plaintiff Polaris Wireless, Inc.***